EXHIBIT 1

# UNITED STATES DISTRICT COURT

for the

District of Alaska

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

895 Ocean Drive Loop, Homer, Alaska, 99603

) ) ) ) ) )

Case No. 3:21-mj-00237-MMS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated here by reference.

located in the _____ District of _____ Alaska _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1752(a)(1) & (2) and 40 U.S.C. §5104(e)(2)(D) & (G) | Knowingly enter or remain and with intent to impede or disrupt the orderly conduct of Government business or official functions. Unlawfully entry at any of the Capitol Buildings with the intent to impede, disrupt or disturb session of Congress |

The application is based on these facts:

See attached Affidavit in Support of Search Warrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Printed name and title*

Sworn to telephonically and signed electronically.

Date: April 22, 2021

*Judge's signature*

City and state: Anchorage, Alaska

Hon. Matthew M. Scoble, United States Magistrate Judge
*Printed name and title*

Case 3:21-mj-00237-MMS Document 6 Filed 04/22/21 Page 1 of 1
Case 3:21-mj-00237-MMS Document 10-2 Filed 07/26/21 Page 1 of 40
Page 1 of 41

EXHIBIT 1

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEARCH OF

895 Ocean Loop Drive, Homer, Alaska
99603

Case No. 3:21-mj-00237-MMS

**Filed Under Seal**

Apr 22 2021

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Wendy Terry, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search 895 Ocean Loop Drive, Alaska, 99603

(hereinafter "SUBJECT PREMISES"), as described in Attachment A, for the things

described in Attachment B. The United States requests authority to seize from the

SUBJECT PREMISES the items described in Attachment B, which your Affiant submits

constitute instrumentalities and evidence of violations under 18 U.S.C. §1752(a)(1) & (2)

and 40 U.S.C. §5104(e)(2)(D) & (G), (hereinafter "TARGET OFFENSES").

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and

have been since June 2014. I am assigned to the Anchorage Field Office, Joint Terrorism

Task Force. As part of my duties as an FBI Special Agent, I investigate international

terrorist organizations and homegrown violent extremists (HVE); to include but not limited

to, terrorist operators, fundraisers, facilitators, and individuals and organizations involved

in the radicalization and recruitment process. During my time with the FBI, I was also

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 1 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 2 of 40
Paae 2 of 41



EXHIBIT 1
Apr 22 2021

assigned to the Violent Crime Squad where I lead and participated in investigations involving violent crimes, threats, robbery, drugs, and child pornography. I have also been an affiant on multiple federal search warrants seeking information related to investigations of violent and sexual offenses.

3.     Prior to June 2014, I was employed with the Savannah Chatham Metropolitan Police Department (SCMPD) in Savannah, Georgia, as a Police Officer and Detective. As a Police Officer and Detective, I was assigned to the Patrol Unit, Crime Suppression Unit, Property Crimes Detective Unit, and Homicide Detective Unit. During these assignments I led and participated in a large number of property crime investigations; led and participated in a large number of drug-related arrests, including buy-bust operations, reverse buy operations, and surveillance operations; and assisted in the preparation and execution of numerous search warrants and arrest warrants. The execution of these search and arrest warrants led to, among other things, the seizure of communication devices, computers, and other documents relating to the transportation, ordering, purchase and distribution of controlled substances, and recovery of stolen property.

4.     Since joining the FBI, I have received formal training at the FBI Academy's Basic Agent Training in Quantico, Virginia. During this five-month course, I received several hundred hours of instruction in federal criminal violations and investigations, including but not limited to training related to federal criminal violations related to violent crime, criminal case management, informant development, and Title III investigations.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 2 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 3 of 40
Page 3 of 41


EXHIBIT 1
Apr 22 2021

5.    I have participated in numerous investigations involving a variety of criminal and national security matters including domestic and international terrorism. Further, I have conducted and participated in the execution of search warrants, arrest warrants, and interviews of witness, victims, and subjects involved in the above-referenced crimes.

6.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

7.    Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. §§ 1512(c)(2); 1752(a)(1) & (2) and 40 U.S.C. §5104(e)(2)(B), (C), (D) & (G) have been committed by MARILYN HUEPER. There is also probable cause to search the property described in Attachment A for evidence, instrumentalities, or fruits of these crimes further described in Attachment B.

## PROBABLE CAUSE

### *Background – The U.S. Capitol on January 6, 2021*

8.    USCP, the FBI, and assisting law enforcement agencies are investigating a riot and related offenses that occurred at the United States Capitol Building, located at 1 First Street, NW, Washington, D.C., 20510 at latitude 38.88997 and longitude -77.00906 on January 6, 2021.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 3 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 4 of 40
Page 4 of 41



EXHIBIT 1 Apr 22 2021

9. At the U.S. Capitol, the building itself has 540 rooms covering 175,170 square feet of ground, roughly four acres. The building is 751 feet long (roughly 228 meters) from north to south and 350 feet wide (106 meters) at its widest point. The U.S. Capitol Visitor Center is 580,000 square feet and is located underground on the east side of the Capitol. On the west side of the Capitol building is the West Front, which includes the inaugural stage scaffolding, a variety of open concrete spaces, a fountain surrounded by a walkway, two broad staircases, and multiple terraces at each floor. On the East Front are three staircases, porticos on both the House and Senate side, and two large skylights into the Visitor's Center surrounded by a concrete parkway. All of this area was barricaded and off limits to the public on January 6, 2021.

10. The U.S. Capitol is secured 24 hours a day by USCP. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

11. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

12. On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which took place on November 3, 2020 ("Certification"). The joint session began at approximately 1:00 p.m. Eastern Standard Time (EST). Shortly thereafter, by

Case 3:21-mj-00237-MMS Document 6-1 Filed 04/22/21 Page 4 of 31
Case 3:21-mj-00237-MMS Document 10-2 Filed 07/26/21 Page 5 of 40
Page 5 of 41

EXHIBIT 1

Apr 22 2021

approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

13.     As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and USCP were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

14.     At around 1:00 p.m. EST, known and unknown individuals broke through the police lines, toppled the outside barricades protecting the U.S. Capitol, and pushed past USCP and supporting law enforcement officers there to protect the U.S. Capitol.

15.     At around 1:30 p.m. EST, USCP ordered Congressional staff to evacuate the House Cannon Office Building and the Library of Congress James Madison Memorial Building in part because of a suspicious package found nearby. Pipe bombs were later found near both the Democratic National Committee and Republican National Committee headquarters.

16.     Media reporting showed a group of individuals outside of the Capitol chanting, "Hang Mike Pence." I know from this investigation that some individuals believed that Vice President Pence possessed the ability to prevent the certification of the presidential election and that his failure to do so made him a traitor.

Case 3:21-mj-00237-MMS Document 6-1 Filed 04/22/21 Page 5 of 31
Case 3:21-mj-00237-MMS Document 10-2 Filed 07/26/21 Page 6 of 40
Page 6 of 41

EXHIBIT 1

Apr 22 2021

17.     At approximately 2:00 p.m., some people in the crowd forced their way through, up, and over the barricades and law enforcement. The crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of law enforcement attempted to maintain order and keep the crowd from entering the Capitol.

18.     Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Publicly available video footage shows an unknown individual saying to a crowd outside the Capitol building, "We're gonna fucking take this," which your affiant believes was a reference to "taking" the U.S. Capitol.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 6 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 7 of 40

Page 7 of 41

EXHIBIT 1

Apr 22 2021



A Reporter's Footage from Inside the Capitol Siege

we're gonna fucking take this [indistinct]

1:16/12:32

19.     Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. That is, at or about this time, USCP ordered all nearby staff, Senators, and reporters into the Senate chamber and locked it down. USCP ordered a similar lockdown in the House chamber. As the subjects attempted to break into the House chamber, by breaking the windows on the chamber door, law enforcement were forced to draw their weapons to protect the victims sheltering inside.

20.     At approximately 2:30 p.m. EST, known and unknown subjects broke windows and pushed past USCP and supporting law enforcement officers forcing their way into the U.S. Capitol on both the west side and the east side of the building. Once inside, the subjects broke windows and doors, destroyed property, stole property, and assaulted

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 7 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 8 of 40
Page 8 of 41



federal police officers. Many of the federal police officers were injured, and several were subsequently hospitalized. The subjects also confronted and terrorized members of Congress, Congressional staff, and the media. The subjects carried weapons including tire irons, sledgehammers, bear spray, and Tasers. They also took police equipment from overrun police including shields and police batons. At least one of the subjects carried a handgun with an extended magazine. These actions by the unknown individuals resulted in the disruption and ultimate delay of the vote Certification.

21.     Also, at approximately 2:30 p.m. EST, USCP ordered the evacuation of lawmakers, Vice President Mike Pence, and president pro tempore of the Senate, Charles Grassley, for their safety.

22.     At around 2:45 p.m. EST, subjects broke into the office of House Speaker Nancy Pelosi.

23.     At around 2:47 p.m., subjects broke into the United States Senate Chamber. Publicly available video shows an individual asking, "Where are they?" as they opened up the door to the Senate Chamber. Based upon the context, law enforcement believes that the word "they" is in reference to members of Congress.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 8 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 9 of 40
Page 9 of 41

EXHIBIT 1

Apr 22 2021



24. After subjects forced entry into the Senate Chamber, publicly available video shows that an individual asked, "Where the fuck is Nancy?" Based upon other comments and the context, law enforcement believes that the "Nancy" being referenced was the Speaker of the House of Representatives, Nancy Pelosi.



Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 9 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 10 of 40
Page 10 of 41


25. An unknown subject left a note on the podium on the floor of the Senate Chamber. This note, captured by the filming reporter, stated "A Matter of Time Justice is Coming."



26. During the time when the subjects were inside the Capitol building, multiple subjects were observed inside the US Capitol wearing what appears to be, based upon my training and experience, tactical vests and carrying flex cuffs. Based upon my knowledge, training, and experience, I know that flex cuffs are a manner of restraint that are designed to be carried in situations where a large number of individuals were expected to be taken into custody.

Case 3:21-mj-00237-MMS  Document 6-1  Filed 04/22/21  Page 10 of 31
Case 3:21-mj-00237-MMS  Document 10-2  Filed 07/26/21  Page 11 of 40
Page 11 of 41

EXHIBIT 1

Apr 22 2021





27.    At around 2:48 p.m. EST, DC Mayor Muriel Bowser announced a citywide

curfew beginning at 6:00 p.m.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 11 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 12 of 40
Page 12 of 41

EXHIBIT 1

Apr 22 2021

28.     At around 2:45 p.m. EST, one subject was shot and killed while attempting to break into the House chamber through the broken windows.

29.     At about 3:25 p.m. EST, law enforcement officers cleared the Senate floor.

30.     Between 3:25 and around 6:30 p.m. EST, law enforcement was able to clear the U.S. Capitol of all of the subjects.

31.     Based on these events, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 pm after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

32.     Beginning around 8:00 p.m., the Senate resumed work on the Certification.

33.     Beginning around 9:00 p.m., the House resumed work on the Certification.

34.     Both chambers of Congress met and worked on the Certification within the Capitol building until approximately 3 a.m. on January 7, 2021.

35.     During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 12 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 13 of 40
Page 13 of 41

EXHIBIT 1
Apr 22 2021

36.     Based on my training and experience, I know that it is common for individuals to carry and use their cell phones during large gatherings, such as the gathering that occurred in the area of the U.S. Capitol on January 6, 2021. Such phones are typically carried at such gatherings to allow individuals to capture photographs and video footage of the gatherings, to communicate with other individuals about the gatherings, to coordinate with other participants at the gatherings, and to post on social media and digital forums about the gatherings.

37.     Many subjects seen on news footage in the area of the U.S. Capitol are using a cell phone in some capacity. It appears some subjects were recording the events occurring in and around the U.S. Capitol and others appear to be taking photos, to include photos and video of themselves after breaking into the U.S. Capitol itself, including photos of themselves damaging and stealing property. As reported in the news media, others inside and immediately outside the U.S. Capitol live-streamed their activities, including those described above as well as statements about these activities.

38.     Photos below, available on various publicly available news, social media, and other media show some of the subjects within the U.S. Capitol during the riot. In several of these photos, the individuals who broke into the U.S. Capitol can be seen holding and using cell phones, including to take pictures and/or videos:

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 13 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 14 of 40
Page 14 of 41



EXHIBIT 1

Apr 22 2021



---

1   https://losangeles.cbslocal.com/2021/01/06/congresswoman-capitol-building-takeover-an-attempted-coup/

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 14 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 15 of 40
Page 15 of 41

EXHIBIT 1

Apr 22 2021





---

[2]     https://www.businessinsider.com/republicans-objecting-to-electoral-votes-in-congress-live-updates-2021-1.

[3]     https://www.thv11.com/article/news/arkansas-man-storms-capitol-pelosi/91-41abde60-a390-4a9e-b5f3-d80b0b96141e

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 15 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 16 of 40
Page 16 of 41



## Facts Specific to This Application

39.  On February 17, 2021, MARILYN HUEPER and PAUL HUEPER were identified by Alaska Airlines flight crew as a "non-compliant" passenger. PAUL and MARILYN HUEPER refused to follow mask regulations and were banned from flying with Alaska Airlines.

40.  On February 24, 2021, the FBI was contacted by the ███████████████

███████████, Witness 1. Witness 1 advised in addition to the mask policy violation committed by both PAUL and MARILYN HUEPER, Witness 1 provided the FBI with an Instagram photograph from PAUL HUEPER's posts. Additionally, Witness 1 searched the FBI's tip line in reference to the Capitol riot and believed the woman in photograph 225 A and B resembled MARILYN HUEPER, by matching the exact description of HUEPER dressed in the same clothing and purse from PAUL HUEPER's Instagram post. Photograph's A and B were taken from inside the Capitol building past the barriers.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 16 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 17 of 40
Page 17 of 41

EXHIBIT 1

Apr 22 2021



**Photograph #225 B**



**Photograph #225 A**

41. On January 10, 2021, PAUL HUEPER posted on Instagram, "Marilyn approaching the Capital. As Patriots, there is a righteous revolution to take back our country. Keep praying…we are only getting stronger and will not quit till until our country is restored. To be there was a once-in-a-lifetime experience. To be surrounded by a million Patriots who loved this country is something I will never forget. STOP THE STEAL!".

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 17 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 18 of 40
Page 18 of 41

EXHIBIT 1
Apr 22 2021



42.     FBI Special Agent ████████████ reviewed the surveillance video from the Capitol and discovered MARILYN HUEPER is also on video between 2:39 P.M. and 2:46 P.M. in the Rotunda Interior Door, H227 Hallway leading to the Speaker of the House's Office, The East Corridor hallway, and the main Balcony area (screen shots provided in paragraphs 45-49). MARILYN HUEPER enters the Speaker of the House's office.



43.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 18 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 19 of 40
Page 19 of 41

EXHIBIT 1

Apr 22 2021





Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 19 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 20 of 40

Page 20 of 41

EXHIBIT 1

Apr 22 2021





44.    On January 6, 2021, MARILYN HUEPER is seen in a video recorded by a

bystander in Speaker Pelosi's office located in the Capitol. The video shows MARILYN

HUEPER reach in from outside of the captured area of the recording, disconnect the laptop

of the attached cables, and then hand her black gloves to an unknown male to use while

grabbing the laptop. Once the laptop cable was removed an unknown male was able to

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 20 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 21 of 40
Page 21 of 41

EXHIBIT 1

Apr 22 2021

remove the laptop from the desk then the recording ended. The device taken was an HP

ProBook 640 G5 i5 Laptop – ████████████████████████████

45.     As MARILYN HUEPER is on video walking in the hallway leading to the

Speaker Pelosi's office, she reaches out with her right hand to push the elevator button.

MARILYN HUEPER was wearing a metallic ring on her right-hand right thumb and

another metallic ring on her right-hand ring finger. MARILYN HUEPER is also seen with

a pair of black gloves in her hands. When comparing the video taken by a bystander of the

laptop being taken the video shows the same jacket, both rings, and the gloves of

MARILYN HUEPER.



Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 21 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 22 of 40
Page 22 of 41

EXHIBIT 1

Apr 22 2021



they got the laptop

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 22 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 23 of 40

Page 23 of 41

*EXHIBIT 1*

Apr 22 2021



they got the laptop

46. A Department of Motor Vehicle query revealed the Driver's License photograph belonging to MARILYN HUEPER. The FBI confirmed the woman in photograph's 225 A and B was MARILYN HUEPER by comparing MARIYLYN HUEPER's Driver License photograph.

47. On March 16, 2021 PROVIDER was served with a preservation letter under 18 U.S.C. § 2703(f) related to Instagram (controlled by Facebook) user display name, Paul Hueper.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 23 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 24 of 40
Page 24 of 41



48.     On March 17, 2021, a grand jury subpoena was served on PROVIDER seeking basic subscriber information regarding Instagram (controlled by Facebook) user display name, Paul Hueper. A response received from the PROVIDER identified Instagram (controlled by Facebook) user display name, Paul Hueper as PAUL HUEPER's and further indicated that PAUL HUEPER was the subscriber associated with the account.

49.     A Department of Motor Vehicles query revealed the Driver's License photograph belonging to PAUL HUEPER. The FBI confirmed Instagram account display name Paul Hueper, was PAUL HUEPER, by comparing PAUL HUEPER's Driver's License photograph, with the Facebook photographs.

50.     On March 23, 2021 MARILYN HUEPER was identified by a third party as the person in FBI BOLO photographs 225 A and B from inside the Capitol. Witness 2 knows MARILYN HUEPER ██████████████ and confirmed she is the person in photographs 225 A and B.

## IDENTIFICATION OF SUBJECT PREMISES

51.     Database search showed MARILYN HUEPER last applied for a Permanent fund Dividend (PFD) in March 2020. The address listed in the application was verified as the SUBJECT PREMISES.

52.     On April 14, 2021 surveillance conducted by FBI employees at the SUBJECT PREMISES confirmed both PAUL and MARILYN HUEPER live at the SUBJECT PREMISES.

//

//

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 24 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 25 of 40
Page 25 of 41

EXHIBIT 1

Apr 22 2021

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

53.    As described below in Attachment B, this warrant seeks authority to search any containers located within the SUBJECT PREMISES capable of holding the items described in Attachment B. These containers include any electronic devices located within the SUBJECT PREMISES. The searching of any electronic devices located within the SUBJECT PREMISES is appropriate for several reasons. First, the search of electronic devices may allow law enforcement to identify any occupants of the premises. Second, in my training and experience, I know that individuals involved in joint criminal activity frequently communicate with one another through cell phones, instant messaging, and other social media platforms. These communications may address planning and execution of the crime, as well as attempts to evade law enforcement. In addition, while planning criminal activities, users may use internet-capable devices such as smart phones, tablets, or laptop computers to locate information about their target, such as a map of the target location and escape routes. Third, I am familiar with instances in which individuals involved in criminal activity have spoken to others through direct communications and other forms of communications, to include text messaging, instant messaging, and social media platforms, about their crimes attributes of digital evidence.

54.    Searches and seizures of evidence from computers and other Internet access devices require agents to seize most or all electronic items (hardware, software, passwords and instructions) to be processed later by appropriate personnel in a controlled environment.

Case 3:21-mj-00237-MMS  Document 6-1  Filed 04/22/21  Page 25 of 31
Case 3:21-mj-00237-MMS  Document 10-2  Filed 07/26/21  Page 26 of 40
Page 260 41

EXHIBIT 1

Apr 22 2021

55.     Searching digital evidence systems for criminal evidence requires experience in the computer and cellular telephone field and a properly controlled environment in order to protect the integrity of the evidence and recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since digital evidence is extremely vulnerable to tampering or destruction (both from external sources and from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

56.     Computers and other digital communications devices contain volatile memory that contains information only while the device is in a powered on and/or running state. I know that powering off the device may result in the loss of the volatile information. Adding an external evidence storage device will cause minor changes to the state of the computer but will allow for the best effort in fully capturing the state of the running evidence. This capture of information requires technical expertise to ensure the resulting data can be examined by all subsequent investigators. This captured information may include current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details relevant to use of the system.

57.     Law enforcement personnel trained in searching and seizing computer data will seize items of evidentiary value and transport the same to an appropriate law enforcement laboratory for off-site review. The electronic media will be reviewed for the evidence described in Attachment B in accordance with and as defined by the review protocols described below.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 26 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 27 of 40
Page 27 of 41

EXHIBIT 1

Apr 22 2021

58.     Based on my knowledge, training, and experience, I know that computer

files or remnants of such files can be recovered months or even years after they have been

downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files

downloaded to a hard drive can be stored for years at little or no cost. Even when such

files have been deleted, they can be recovered months or years later using readily

available forensics tools. When a person "deletes" a file on a home computer, the data

contained in the file does not actually disappear; rather, that data remains on the hard

drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted

files, may reside in free space or slack space - that is, in space on the hard drive that is not

allocated to an active file or that is unused after a file has been allocated to a set block of

storage space - for long periods of time before they are overwritten. Files that have been

viewed via the Internet are automatically downloaded into a temporary Internet directory

or "cache." The browser typically maintains a fixed amount of hard drive space devoted

to these files, and the files are only overwritten as they are replaced with more recently

viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a

hard drive depends less on when the file was downloaded or viewed than on a particular

user's operating system, storage capacity, and computer habits. The search for these files

and file fragments can take considerable time, depending on the computer user's

practices.

59.     I know from training and experience that computers or other digital devices

used to access the Internet usually contain files, logs or file remnants which would tend to

show ownership and use of the device, ownership and use of any external devices that

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 27 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 28 of 40
Page 28 of 41



had been attached to the computer or other digital devices, as well as ownership and use of Internet service accounts used for the Internet or cellular data network access.

60.     I know from training and experience that digital crime scenes usually include items or digital information that would tend to establish ownership or use of digital devices and Internet access equipment and ownership or use of any Internet service or digital cellular service accounts used to participate in the exchange, receipt, possession, collection or distribution of child pornography.

### SPECIFIC METHODS OF SEARCHING FOR DIGITAL EVIDENCE

61.     I am seeking authority to search for, among other things, items containing digital data, more particularly described in Attachment B.  Consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

62.     The search of a computer hard drive, cell phone, or other computer storage medium is a time-consuming manual process often requiring months of work.  This is so for a number of reasons, including the complexity of computer systems, the multiple devices upon which computing can take place, and the tremendous storage capacity of modern-day computers, and the use of encryption or wiping software.  I know from my

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 28 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 29 of 40
Page 29 of 41



training and experience, and from my discussions with trained computer forensic examiners, that a review of such quantities of evidence can take a significant amount of time. Second, there is a limited pool of personnel capable of conducting a forensic examination. Third, in some instances an individual may utilize encryption software or other publicly-available techniques such as wiping software to hide their activities. Forensic tools are available to circumvent some of these techniques; however, these tools may require a significant allocation of resources and a substantial period of time. With rare exception, searches will not be performed on original digital evidence. Instead, I know that the first priority of a digital evidence forensic examination is the preservation of all data seized. As such, original digital media will be, wherever possible, copied, or "imaged," prior to the start of any search for evidence. The copy will be authenticated digitally as described in the paragraph below.

63.     I know that a digital forensic image is the best possible copy that can be obtained for a piece of digital media. Forensic imaging tools make an exact copy of every accessible piece of data on the original digital media. In general, the data contained on the original media is run through a hashing algorithm as described above, and a hash value for the entire device is generated. Upon completion of the imaging process, the same hash algorithm is run on the imaged copy to ensure the copy is an exact duplicate of the original.

64.     In the event that a piece of digital media is found not to be (a) an instrumentality of the offense, (b) a fruit of the criminal activity, (c) contraband, or (d) evidence of the offenses specified herein, it will be returned as quickly as possible.

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 29 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 30 of 40
Page 30 of 41



EXHIBIT 1

Apr 22 2021

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

65.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules

of Criminal Procedure, permission to communicate information to the Court by telephone

in connection with this Application for a Search Warrant. I submit that Assistant U.S.

Attorney Adam Alexander, an attorney for the United States, is capable of identifying my

voice and telephone number for the Court.

## SEALING REQUEST

66.     It is respectfully requested that this Court issue an order sealing, until

further order of the Court, all papers submitted in support of this application, including

the application and search warrant. I believe that sealing this document is necessary

because the items and information to be seized are relevant to an ongoing undercover

investigation and not all of the targets of this investigation will be searched at this time.

Based upon my training and experience, I have learned that criminals actively search for

criminal affidavits and search warrants via the Internet. Premature disclosure of the

contents of this affidavit and related documents may have a significant and negative

impact on the continuing investigation and may severely jeopardize its effectiveness by

allowing any individuals suspecting in this case of fleeing and destroying evidence.

## CONCLUSION

67.     Based upon the information above, your affiant submits that there is probable

cause to believe that violations of Title 18, United States Code, Section 18 U.S.C.

§1752(a)(1) & (2) and 40 U.S.C. §5104(e)(2)(D) & (G), that the items described in

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 30 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 31 of 40
Page 31 of 41



EXHIBIT 1

Apr 22 2021

Attachment B are evidence and instrumentalities of the above-described violation, and that the items described in Attachment B are likely to be found in the SUBJECT PREMISES described in Attachment A.

68.     I submit that this affidavit demonstrates and establishes that there is probable cause for a warrant to search the SUBJECT PREMISES described in Attachment A, and the seizure of the items described in Attachment B.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April  22 ,

2021.

UNITED STATES MAGISTRATE JUDGE

Case 3:21-mj-00237-MMS   Document 6-1   Filed 04/22/21   Page 31 of 31
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 32 of 40
Page 32 of 41

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEARCH OF )
)
895 Ocean Drive Loop, Homer, Alaska, ) Case No. 3:21-mj-00237-MMS
99603 )
) **FILED UNDER SEAL**
)
)
) _____ Apr 22 2021

## ATTACHMENT A

*Property to be searched*

The property to be searched is described as follows:

895 Ocean Loop Drive, Homer is a two-story residential building. The east side of

the building and the second floor are utilized as rooms for rent. The rental room are

clearly marked as the Alpenglow, Glacier, High Tide, and Bay View rooms. The rest of

the living space is marked to the public as "Private Rooms- Staff Only". The property to

be searched will be limited to only areas maintained, controlled, and lived in by the

owners of the property.

As described in this warrant, 895 Ocean Drive Loop, Homer, Alaska, 99603

(SUBJECT PREMISES), includes all rooms (not rented), attics, basements, and other

parts therein that could house or contain the items identified in Attachment B, the

surrounding grounds, and any garages, storage rooms, trash containers, outbuildings and

vehicles of any kind located thereon.

Case 3:21-mj-00237-MMS   Document 6-2   Filed 04/22/21   Page 1 of 2
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 33 of 40
Page 33 of 41

EXHIBIT 1

Apr 22 2021





XXXXXXXXXXXXXXXXXXXXXXXNOTHING FOLLOWSXXXXXXXXXXXXXXXXXXXXXX

Case 3:21-mj-00237-MMS   Document 6-2   Filed 04/22/21   Page 2 of 2
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 34 of 40

Page 34 of 41

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEARCH OF )
                                                )
895 Ocean Drive Loop, Homer, Alaska,   ) Case No. 3:21-mj-00237-MMS
99603                                           )
                                                ) **FILED UNDER SEAL**
                                                )
                                                )
                                                )

**ATTACHMENT B**

Apr 22 2021

### Particular Items to be Seized and Procedures
### to Facilitate Execution of the Warrant

1.     The following items to be searched for and seized from the property listed

in Attachment A constitute instrumentalities and evidence of violations of 18 U.S.C.

§1752(a)(1) & (2) and 40 U.S.C. §5104(e)(2)(D) & (G).

   a. Clothing, including dark colored hooded women's long "puffy" style jacket
      with white lettering on the upper left shoulder, dark colored leather boots,
      dark pants, a black shirt with white flower patterns, and an orange reflective
      belt;

   b. Jewelry, including, metallic thumb ring, and metallic band sized for ring
      finger, and diamond shaped dangling earrings;

   c. HP ProBook 640 G5 i5 Laptop – ███████████████████ and

   d. Any other property stolen from the Capitol on January 6, 2021.

2.     Any containers located within the location listed in Attachment A capable of

containing any of the items identified above;

Case 3:21-mj-00237-MMS   Document 6-3   Filed 04/22/21   Page 1 of 4
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 35 of 40
Page 35 of 41

EXHIBIT 1    Apr 22 2021

3.      Any computer or storage medium, including mobile phones, tablets, laptops, and other internet-capable devices, capable of containing any documents, receipts, correspondence, communications, images/media of the above items, found within the location described in Attachment A, and whose seizure is otherwise authorized by this warrant (hereinafter "DEVICE") may be searched for the following:

   a.  All photographs, images, videos, communication, text messages, instant messages, emails made on or after January 6, 2021 made in reference to entering the Capitol building, to include but not limited to, theft of electronic devices;

   b.  Evidence of the times the DEVICE was used;

   c.  Evidence of who used, owned, or controlled the DEVICE at the time of the violation listed in this warrant were created, edited, or deleted;

   d.  Documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writings, drawings or paintings); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical,

Case 3:21-mj-00237-MMS   Document 6-3   Filed 04/22/21   Page 2 of 4
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 36 of 40
Page 36 of 41



arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

## I.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 U.S.C. §§ 1512; 1752(a)(1) & (2) and 40 U.S.C. §5104(e)(2)(B), (C), (D) & (G) as described in the affidavit submitted in support of this Warrant, including, for the Account, information pertaining to the following matters:

(a) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation, including records that help reveal their whereabouts;

(b) Information that constitutes evidence indicating the state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(c) Information that constitutes evidence concerning the breach and unlawful entry and damage to property of the United States Capitol on January 6, 2021;

(d) Information that constitutes evidence concerning the riot at the United States Capitol on January 6, 2021;

(e) Information that constitutes evidence concerning disruption of proceedings by and before the U.S. Congress at the United States Capitol on January 6, 2021;

Case 3:21-mj-00237-MMS   Document 6-3   Filed 04/22/21   Page 3 of 4
Case 3:21-mj-00237-MMS   Document 10-2   Filed 07/26/21   Page 37 of 40
Page 37 of 41

EXHIBIT 1

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Alaska

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>895 Ocean Drive Loop, Homer, Alaska, 99603 | )<br>)<br>)<br>)<br>)<br>) |

Case No.    3:21-mj-00237-MMS

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Alaska _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated here by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

See Attachment B, incorporated here by reference.

**YOU ARE COMMANDED** to execute this warrant on or before     May 6, 2021 _____  *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____

Date and time issued:     April 22, 2021/1000 hours

_____
*Judge's signature*

City and state:     Anchorage, Alaska

Hon. Matthew M.Scoble, United States Magistrate Judge
*Printed name and title*

## EXHIBIT 1

| Return | | |
|---|---|---|
| **Case No.:**<br>3:21-mj-00237-MMS | **Date and time warrant executed:** | **Copy of warrant and inventory left with:** |

Inventory made in the presence of

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

EXHIBIT 1

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: 266D-AN-3599465

On (date) 4/28/21

Item (s) listed below were:
- ☒ Collected/Seized
- ☐ Received From
- ☐ Returned To
- ☐ Released To

(Name) Marilyn Hueper

(Street Address) 375 Ocean View Loop

(City) Homer, AK 99603

Description of Item (s): 1 pink iPhone 5 - model A1633
1 pink iPhone - model A1778
1 coral iPhone - serial: FFWZC2YKXL4 (Not Taken)
1 microsoft Surface Pro Model 1865 serial: 058925294653
1 Declaration of Independence
1 iPad 16GF serial: DYTJ3NZMDVD7
1 iPad serial# F9FR33FNFLMX, model A1499

Received By: _____ (Signature)

Printed Name/Title: SA Wendy Terry

Received From: _____ (Signature)

Printed Name/Title: Paul Hueper

Page 41 of 41